UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:08-CR-116-GFVT-HAI |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| RICKY GRAY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Van Tatenhove (D.E. 42 at 2), the Court considers reported violations of supervised release conditions by Defendant Ricky Gray.

Judge Van Tatenhove entered a judgment against Defendant in April 2009 on a plea of guilty to interstate transportation of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1).  D.E. 23.  Defendant received a sentence of 121 months of imprisonment followed by lifetime supervised release, pursuant to 18 U.S.C. § 3583(k).  *Id.* at 2-3.  Defendant began his supervised release on March 30, 2018.  On June 14, 2019, a Report on Offender Under Supervision was submitted to the Court after Defendant admitted to having unauthorized contact with minors.  No action was taken by the Court per the probation officer's recommendation.  D.E. 41.

**I.**

On June 11, 2021, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings.  The Report charges three violations.  According to the Report:

On April 2, 2021, Ricky Gray submitted to a polygraph examination per special condition #1. During the examination, Gray was asked specific questions regarding his compliance with sex offender special conditions. The resulting score of the examination was significant response and the examiner opined that Gray was not being truthful in answering the pertinent questions. During the post examination interview with the polygraph examiner, Gray admitted to having unintentionally viewed pornography when co-workers or family members unexpectedly showed it to him on their smartphones.

On April 13, 2021, Gray met with the undersigned to discuss the results of the polygraph examination. During the meeting, Gray relayed that he had seen pornography on smartphones belonging to coworkers or family members. Additionally, he advised that he had used his aunt's smartphone to use the GPS features and he had performed troubleshooting on his mother's smartphone when it did not operate properly.

On June 9, 2021, Gray submitted to a polygraph examination as a follow up to the examination conducted on April 13, 2021. He was again asked specific questions regarding his compliance with sex offender special conditions. Again, the resulting score was significant response and the examiner opined that Gray was not being truthful when answering the pertinent questions.

On June 10, 2021, the undersigned met with Gray to discuss the results of the polygraph examination. Gray was asked when he most recently intentionally looked at pornography. Gray stated approximately one month ago, he found a smartphone at a friend's home and used it to set up a profile on Grindr. Grindr is a social networking application. Gray advised he saw photographs of nude men and transsexuals on the application. Gray advised that he was on the application to check his profile activity as recently as two weeks ago.

Continuing on June 10, 2021, Gray was asked when he most recently viewed child pornography. Gray stated that approximately two weeks ago, he was chatting with a man on the Grindr application and the man suggested they use the website Omegle. Omegle is an online chat website that randomly pairs users with other people. Omegle has a video chat feature. Gray stated that while on Omegle, he was paired with a minor male who Gray estimated was 16 or 17 years of age. According to Gray, the minor male was masturbating in the video chat. Gray stated that when the minor male realized that Gray was a male, he (the minor male) ended the video feed.

First, the Report charges a violation of the special condition that Defendant "shall not possess or use any computer or any device with access to any on-line computer service at any location, including place of employment, without the prior written approval of the probation

officer." The Report cites to Defendant's admitted use of a smartphone from a friend's house to access the internet, use of his aunt's phone to utilize GPS features, and performance of troubleshooting on his mother's smartphone as the underlying conduct for this violation. This is a Grade C Violation.

Violation #2 charges a violation of the special condition that Defendant "shall not possess, view, listen to or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available." In support of this violation, the Report cites to Defendant "viewing pornography while using a smartphone to access the Grindr application." This is also a Grade C violation.

Violation #3 charges a violation of the condition that Defendant "shall not commit another federal, state, or local crime." In support of this violation, the Report states that Defendant "admitted to viewing a minor male masturbating in a video chat on the Omegle website" in violation of 18 U.S.C. § 2552A(5)(b).[1] The Report states that this is a Grade A violation based Defendant's underlying conviction and the resulting penalty in § 2252A(b)(1) of a term of imprisonment of not less than fifteen years and not more than forty years as stated in § 2252A(b)(1). However, the United States filed a notice that the parties conferred and agreed that the conduct in Violation #3 qualifies as a Grade B violation. D.E. 53. The notice explains that § 2252A(b)(2) governs penalties for violations of § 2252A(5)(b), which carries a potential term of imprisonment of not more than twenty years with a qualifying prior conviction, excluding it from the Grade A classification in U.S.S.G. § 7B1.1(a)(1)(B). *Id.* The Court agrees with the parties' assessment that Violation #3 is a Grade B violation.

---

[1] On June 25, 2021, the USPO circulated an amended version of the Report with the sole change being the cited statute in Violation #3, which was originally 18 U.S.C. § 2252A(a)(3)(B)(i).

3

## II.

Defendant's initial appearance pursuant to Rule 32.1 occurred on June 16, 2021, before Magistrate Judge Atkins. D.E. 47. The Court set a final hearing following Defendant's knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *Id*. The government moved for interim detention; Defendant argued for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), Judge Atkins found detention was required. *Id.*

Due to the circulation of the amended version of the Report, the Court converted the final hearing scheduled on June 25, 2021, to a status conference and scheduled the final hearing for July 15, 2021. D.E. 48; D.E. 49.

At the final hearing, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 54. Defendant waived a formal hearing and announced an intent to stipulate to all three violations. During the colloquy, Defendant stated that his understanding of Omegle was that the website connects users by video at random and he intended to meet adult men on the site. Furthermore, Defendant stated that he was not sure whether the male he connected with on Omegle was a minor or an adult. Defendant explained he only saw the groin area of the male, who appeared to be anywhere from late teens to early twenties in age. Defendant further explained that the male appeared to be postpubescent but lacked body hair, which could have resulted from either grooming or young age. Overall, Defendant stated that, based on his experience, the male appeared more similar to individuals he had seen in adult pornography rather than child pornography. Due to an insufficient factual basis that Defendant accessed Omegle with an intent to view child pornography, the Court indicated to the parties that a recommendation to District Judge Van Tatenhove to accept Defendant's stipulation to Violation

4

#3 could not issue. The United States agreed and moved to dismiss Violation #3. The Court will recommend that the motion be granted, but as explained to Defendant, the Court still considers the underlying conduct in Violation #3 in forming its sentence recommendation.

Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1 and #2. D.E. 54. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1 and #2, thus the government established both under the standard of § 3583(e).

The parties each presented their recommended sentence. The government recommended a sentence of nine months of imprisonment followed by lifetime supervision. Defense counsel recommended a sentence of six months of imprisonment followed ten years of supervision.

Defendant's lifetime supervision was imposed prior to the Sixth Circuit's decision in *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), which requires close examination of the imposition of a lifetime term of supervised release and accompanying special conditions. Accordingly, at the hearing, the Court addressed the special conditions for sex offenders in light of *Inman*.

### III.

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying judgment in this District. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to interstate transportation of visual depictions of minors engaged in sexually explicit conduct. *See*

D.E. 20 (plea agreement); 18 U.S.C. § 2252(a)(1). This is a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-439 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would constitute Grade C violations. Given Defendant's Criminal History Category of I (the category at the time of the conviction in this District) and Grade C violations, Defendant's range, under the Revocation Table of Chapter 7, is three to nine months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violations. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, under 18 U.S.C. § 3583(h), he faces a lifetime maximum term of supervised release following revocation.

### IV.

As noted, the government recommended a sentence of nine months of imprisonment followed by lifetime supervision, and defense counsel recommended a sentence of six months of imprisonment followed by ten years of supervision. The Court finds the government's recommendation to be appropriate under the circumstances and recommends revocation with nine months of imprisonment followed by lifetime supervision.

In support of its recommendation, the government focused on Defendant's history and characteristics and breach of the Court's trust. While acknowledging that he appeared to be forthright during the hearing, the government stated Defendant's breach of the Court's trust is especially pronounced because of his deceit regarding the violations. Further, the government argued this breach is egregious in light of the Court's leniency of not revoking Defendant's supervision after his unauthorized contact with minors in June 2019. The government also stated that the conduct underlying the violations qualifies as new felony conduct.

As to the nature and circumstances of the original offense, the government explained that the conduct underlying Violation #3 may be worse because it is arguably closer to hands-on contact, which also weighs in favor of lifetime supervision. Finally, the government argued that the anonymity of Omegle creates a "breeding ground" for illegal conduct and harm to minors, which is why Defendant should not have access to it and similar websites.

Defense counsel argued that the results of the polygraph that Defendant was being deceptive could have been caused by his use of GPS features while traveling to the examination. Defense counsel further argued that Defendant's PSR reflects his struggle with his sexuality and the past abuse he suffered. Defense counsel also stated that, although not excused, Defendant's struggle with the conditions of supervision is understandable in light of the prevalence of social media and online dating in today's society.

Defense counsel stated that Defendant was not seeking out child pornography when he accessed the Omegle website, but acknowledged that he still made a mistake. In addition to any sex offender treatment Defendant will receive, counsel also suggested that he receive regular therapy to fully address his mental and emotional issues.

Defendant declined to address the Court.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range of three to nine months. The Court recommends revocation with a nine-month term of imprisonment and reimposition of lifetime supervision.

Regarding the circumstances of the offense of conviction, transportation of child pornography causes great harm to the victims. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that the "circumstances of the offense" described in 18 U.S.C. § 3553(a)(1) refers to "the original offense of conviction"). Such pictures, especially when unleashed on the web, can effectively become immortal.

Regarding Defendant's history and characteristics, there is a significant continuing generalized risk of harm to vulnerable members of society. Moreover, there is also a need for specific deterrence and protection of the public given Defendant's use of real time video and chat websites that are closer to hands-on contact with minors than his original conviction.

Regarding the need for education and treatment, the parties and the Court agree that Defendant needs continued treatment. This is covered by the conditions of release, which requires treatment of mental health/sexual disorders.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The breach of trust here is particularly egregious in light of Defendant's deception and the nature of the violations and underlying conduct. Although the Court appreciates the candor and credibility of Defendant during the final hearing, deception will not be tolerated. This deception warrants a recommendation at the top of the Guidelines Range.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. Here, as usual, this factor is addressed by imposing a within-Guidelines sentence.

The Court recommends reimposition of lifetime supervision. Lifetime supervision is authorized by 18 U.S.C. § 3583(k) and is consistent with the policy statement at Guideline 5D1.2(b). The standard conditions should be reimposed. In light of the Sixth Circuit's decision in *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), the Court will examine each individual special condition. The Court will recommend imposition of the conditions originally imposed on Defendant with certain modifications following *Inman*. *See* D.E. 23. The recommended conditions are as follows:

### SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall participate in a program for treatment of mental health/sexual disorders, and shall undergo a sex offender risk assessment, psychosexual evaluation and/or other evaluation as needed, be subject to periodic polygraph examinations, at the discretion and direction of the probation officer, and shall follow the rules and regulations of the sex offender treatment program as implemented by the probation office.

2. The defendant shall not consume any alcoholic beverages.

3. The defendant's residence and employment shall be pre-approved by the probation officer and in compliance with state and local law.

4. The defendant shall not frequent, volunteer, or work at places where children under the age of 18 congregate (e.g. playgrounds, parks, day-care centers, public swimming pools, youth centers, video arcade facilities) unless approved by the probation officer, and shall have no contact with victims.

5. The defendant shall not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18 without the permission of the U.S. probation officer. This provision does not encompass persons under the age of 18 such as ticket vendors, cashiers, waiters, etc., with whom the defendant must deal in order to obtain ordinary and usual commercial services.

6. The defendant shall not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available.

7. The defendant shall not possess or use a device capable of creating pictures or video, without the approval of the probation officer.

8. The defendant shall not rent or use a post office box or storage facility., without the approval of the probation officer.

9. The defendant shall register as a sex offender as prescribed by state or federal law.

10. The defendant shall not possess or use a computer or any device with access to any on-line computer service at any location, including place of employment, without the prior written approval of the probation officer.  This includes any Internet Service provider, bulletin board system, or any other public or private network or email system.

11. The defendant shall consent to the U.S. Probation Office conducting unannounced examinations of any and all electronic devices (i.e. computer system(s), internal/external storage devices, hand-held devices, etc.), which may include retrieval and copying of all memory from hardware/software and/or removal of such system(s) for the purpose of conducting a more thorough inspection and will consent to having installed on his computer(s) or electronic devices any hardware/software to monitor device use or prevent access to particular materials, and to consent to periodic inspection of any such installed hardware/software to insure it is functioning properly.

12. The defendant shall provide the U.S. Probation Office with accurate information about his entire computer system (hardware/software) and all electronic devices; all account usernames; all passwords used by him; and, will abide by all rules of the Electronic Device Restriction and Monitoring Program.

13. The defendant shall submit his person, residence, office, vehicle, or any property under his control to search, conducted by a United States Probation Officer(s) at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of supervision. The defendant shall inform any other residents that the premises may be subject to searches pursuant to this condition.

14. The defendant shall provide the probation officer with access to any requested financial information.

In light of *Inman*, these conditions are appropriate for the reasons stated on the record during the July 15 hearing, as summarized below:

Special Condition #1, concerning treatment, is necessary in light of Defendant's underlying conviction and current violations. He has already completed the District's sex offender treatment program, but must complete that treatment again. Continued use of polygraph examinations is warranted because of his dishonesty with the USPO.

Special Condition #2, prohibiting Defendant's consumption of alcohol is necessary in light of his history of alcohol abuse. Defendant's PSR indicates that he began drinking alcohol at age seven or eight and has a familial history of alcoholism. Defendant heavily consumed alcohol during his teenage years but stopped consuming it in 2007. However, there remains a danger that he could return to alcohol use, which could lower his inhibition and affect his judgment, leading to violation conduct.

Special Condition #3, concerning pre-approval of Defendant's residence and employment, is needed to help Defendant comply with state sex offender laws.

Special Conditions #4 and #5, concerning contact with minors, are justified based on Defendant's prior transportation of child pornography and the current violations and underlying conduct. The similarities between his current behavior and his underlying conviction heighten this justification. Defendant's current behavior is even closer to illegal, direct contact with minors than his prior transportation of child pornography. Following *Inman*, these conditions were rewritten to allow contact with minors upon approval of the probation officer, which was already included in Defendant's original conditions.

Special Conditions #6 and #7 are crafted to eliminate Defendant's access to pornography. Here, Defendant has demonstrated that he poses a risk to vulnerable victims. Access to sexually

stimulating material enhances that risk, which is reflected by Defendant's underlying conduct to the current violations. In light of his history, the USPO must be involved in the selection and configuration of Defendant's electronic devices. They need to know what devices and access he has, and what he can do with them. This condition is not a blanket prohibition, but allows for possession of such items after sufficient safeguards and monitoring strategies are in place, and is not more restrictive than necessary.

Special Condition #8, concerning post office boxes and storage facilities, is designed to help the USPO detect any use of sexually stimulating materials. The post-*Inman* version of this condition does not prohibit alternative addresses or storage facilities, but requires their disclosure to the USPO to diminish Defendant's ability to circumvent other conditions of his release.

Special Condition #9, requiring Defendant to register as a sex offender as prescribed by state law, is specifically contemplated in 18 U.S.C. § 3583(d).

Special Conditions #10, #11, and #12, regulate Defendant's access to electronic devices and permit inspection by the USPO. These conditions have been updated to address changes in technology. Defendant has displayed skill in using electronic devices such as computers and smartphones to view pornography. These devices are becoming increasingly difficult to monitor, as Defendant himself has demonstrated. These conditions will enable the USPO to have knowledge of, and access to, any electronic devices and related hardware and software. These conditions will help deter further criminal and violation conduct and protect the public from the risks associated with pornography use by Defendant. The condition as written allows the use of electronic devices with prior written permission of the probation officer. The Court is sympathetic to Defendant's efforts to meet new people, date, and create healthy relationships while complying with these conditions in a time when social media and online dating are so

prevalent. However, Defendant's conduct reflects the necessity of these conditions and the posed risk of further illegal conduct.

Special Condition #13, concerning searches, is authorized by § 3583(d). Because Defendant carries the special risks associated with sex offenders, the USPO needs authority to conduct searches and monitor his compliance with the law.

Special Condition #14, concerning financial disclosures, is designed to help the USPO monitor Defendant's purchases of electronic devices, internet services, and anything else implicated by the other conditions of supervised release.

The Court also recommends an additional special condition that these conditions be reevaluated after ten years. This special condition is recommended because the Court cannot predict the extent of supervision necessary at that time and what technological changes may occur in the future. A reevaluation will enable the Court to adjust Defendant's conditions to address any of his emerging needs, any advances in technology, and any changes in the law that may occur. This will also enable Defendant to demonstrate that he can comply with all of the conditions of his supervision, which provide a basis for adjusting the terms of his supervision. This review does not limit the USPO's ability to seek a modification of the conditions of release prior to the ten-year review.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. That Defendant, upon his stipulation, be found guilty of Violations #1 and #2;

2. The government's motion to dismiss Violation #3 be granted;

2. Revocation and imprisonment for a term of nine months; and

13

3. Reimposition of lifetime supervision with the original conditions included in Defendant's Judgment, with certain modifications and with an additional special condition for a review after ten years of Defendant's progress and his conditions.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 19th day of July, 2021.

Signed By:
Hanly A. Ingram
United States Magistrate Judge